UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-20413-CR-GAYLES

UNITED STATES OF AMERICA

vs.

LESTER DELGADO ECHEVARRIA,

    **Defendant.**
_____/

## FACTUAL PROFFER

If this matter had proceeded to trial, the government and the defendant Lester Delgado Echevarria (the "defendant"), by and through his attorney, hereby agree that, were this case to proceed to trial, the United States would prove beyond a reasonable doubt the following facts, among others, which occurred, in the Southern District of Florida:

1. The Medicare Program ("Medicare") was a federal health care program that provided free or below-cost health care benefits to individuals who were sixty-five years of age or older or disabled. The benefits available under Medicare were governed by federal statutes and regulations. The United States Department of Health and Human Services ("HHS"), through its agency the Center for Medicare and Medicaid Services ("CMS"), oversaw and administered Medicare. Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program" as defined in Title 18, United States Code, Section 24(b).

3. Medicare was subdivided into multiple program "parts." Medicare Part A covered health care services provided by hospitals, skilled nursing facilities, hospices, and home health

1

agencies. Medicare Part B covered physician services and outpatient care, including an individual's access to durable medical equipment ("DME").

4. DME was equipment designed for everyday or extended use and for a medical purpose, such as orthotic devices, speech generating devices, collagen dressing, wheelchairs, prosthetic limbs, wheelchairs, nebulizers, and oxygen concentrators.

5. DME companies, physicians, and other health care providers that provided services to Medicare beneficiaries were referred to as Medicare "providers." To participate in Medicare, providers were required to submit an application in which the providers agreed to comply with all Medicare-related laws and regulations. If Medicare approved a provider's application, Medicare assigned the provider a Medicare "provider number." A health care provider with a Medicare provider number could file claims with Medicare to obtain reimbursement for services rendered to beneficiaries.

6. Enrolled Medicare providers agreed to abide by the policies, procedures, rules, and regulations governing reimbursement. To receive Medicare funds, enrolled providers were required to abide by the Anti-Kickback Statute and other laws and regulations. Providers were given access to Medicare manuals and services bulletins describing billing procedures, rules, and regulations.

7. Medicare reimbursed DME companies and other health care providers for items and services rendered to beneficiaries. To receive payment from Medicare, providers submitted or caused the submission of claims to Medicare, either directly or through a billing company.

8. A Medicare claim for DME reimbursement was required to set forth, among other things, the beneficiary's name and unique Medicare identification number, the equipment provided to the beneficiary, the date the equipment was provided, the cost of the equipment, and the name

and unique physician identification number of the physician who prescribed or ordered the equipment.

9. A claim for DME submitted to Medicare qualified for reimbursement only if it was medically necessary for the treatment of the beneficiary's illness or injury, prescribed by a licensed physician, and actually provided to the beneficiary as billed.

10. From in or around April 2022, through in or around July 2022, the defendant engaged in a scheme to unlawfully enrich himself by, among other things: (a) submitting and causing the submission of false and fraudulent claims to a health care benefit program through interstate wire communications; (b) concealing the submission of false and fraudulent claims to a health care benefit program; (c) concealing the receipt of the fraud proceeds; and (d) diverting the fraud proceeds for their personal use and benefit.

11. In furtherance of the scheme, the defendant provided his personal identifying information and signed various documents representing to Medicare that the defendant was the true owner of Agbe Solutions, Inc. ("AGBE"), a Florida corporation located in Miami, Florida, that purportedly provided DME to Medicare beneficiaries.

12. Specifically, on or about April 7, 2022, the defendant signed a one-page Bill of Sale that purported to transfer ownership of AGBE to the defendant, which form was subsequently transmitted to Medicare.

13. In addition, on or about April 22, 2022, an Electronic Funds Transfer Authorization Agreement, which directed Medicare to pay AGBE through electronic transfers to an AGBE bank account at Bank 1 (the "AGBE Bank Account"), was submitted to Medicare. The defendant signed the Electronic Funds Transfer Authorization Agreement as the owner of AGBE.

14. From on or about May 31, 2022, through on or about July 18, 2022, AGBE billed Medicare approximately $3,062,196 for DME claims, which claims were submitted through an Internet portal that caused a communication in interstate commerce. One of those claims, Claim No. 122151721080000, was submitted on or about May 31, 2022, on behalf of beneficiary L.E., for collagen dressing, sterile, size 16 sq. in. or less, in the amount of $6,117.50.

15. Dr. R.A. was the purported prescribing physician for approximately 33% of claims submitted by AGBE and 63% of paid claims, including Claim No. 122151721080000. Dr. R.A., however, did not treat any of the patients or prescribe any of the DME for which AGBE billed Medicare for DME.

16. From on or about June 3, 2022, through on or about July 22, 2022, Medicare paid AGBE approximately $2,321,181 for DME claims through electronic transfers to the AGBE Bank Account in the Southern District of Florida.

17. On or about August 22, 2022, law enforcement detained the defendant, and seized approximately $14,200 United States currency, which represents proceeds of the health care fraud offense. Post-*Miranda*, the defendant admitted that he was paid to pose as the owner of AGBE in exchange for approximately $100,000 United States currency.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

18. These are not the only facts known to the United States of America in this matter, nor are they all of the facts that the United States of America would present, had this case gone to trial.

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

Date: 2/9/2023  By: _____
STEPHANIE HAUSER
ASSISTANT UNITED STATES ATTORNEY

Date: 2/9/23  By: _____
JUAN DE JESUS GONZALEZ
ATTORNEY FOR DEFENDANT

Date: 2/9/23  By: _____
LESTER DELGADO ECHEVARRIA
DEFENDANT